■ In the Matter of EDWARD O. LEWIS, Petitioner, v VILLAGE BOARD OF TRUSTEES OF THE VILLAGE OF SCOTIA, Respondent.—Proceeding pursuant to

CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Schenectady County) to review a determination of the Village Board of Trustees of the Village of Scotia suspending the petitioner, without pay, for a period of two months after hearing pursuant to section 75 of the Civil Service Law. Petitioner has held the position of Chief of the Fire Department of the Village of Scotia since 1969, and has been a paid member of the fire department since 1950. He attained his present position by passing an open, competitive Civil Service examination. At the request of the Board of Fire Commissioners, 11 charges were preferred against petitioner. After a hearing it was found that three of the charges had been proven and constituted misconduct, wherefore petitioner was suspended, without pay for 60 days. Charge 5, the first charge which was sustained, arose out of the discovery that the fire alarm system was out of order on a day in July, 1973, when petitioner was officially off duty. When notified of this failure, petitioner took certain steps in an effort to correct the defect, which through no fault of his own were ineffectual.* However, as was found in the report of the hearing officer which was adopted by respondent village, petitioner "made no further effort to secure technical qualified assistance to restore the system at the earliest possible moment", thus requiring some of the Commissioners, who serve without compensation primarily to oversee operations, "to undertake the necessary steps * * * to put the alarm system back in service." It was the obligation of petitioner, declared the report, to act promptly to effectuate the necessary repairs. These conclusions are based upon testimony that the Chief refused to attempt to contact the agency which serviced the system or its local representative (the representative was contacted by one of the Commissioners and restored half the system later that day), that he stated that he could not do anything more about it and was not going to get involved, that he took no part in helping enlist anyone to make the remaining repairs, and that he would not give the Commissioners information that was known to him about the alarm system because of a grievance stemming from a denial of a pay raise. While contrary or explanatory evidence was offered, our review of the record establishes that there was substantial evidence to find that the facts were as above recited. While the Chief was not personally capable of repairing the alarm system (and he was not charged with or found guilty of failing to do so), we agree that petitioner's recalcitrance, lack of co-operation and refusal to make his best efforts to effectuate repairs of a critically important alarm system justifies a finding of misconduct. As commanding officer, petitioner was responsible for meeting daily emergencies, and it was reasonable for the Commissioners, who met only once a month, to expect him to react to such an emergency in a more forthright manner. Petitioner's contention that he was off-duty on the day of the breakdown is not an adequate defense, particularly in view of the fact that he had made some effort at corrective action. The nature of petitioner's responsibilities was such that considerations of hours of employment in reacting to emergencies was not appropriate. Moreover, his lack of co-operation in helping to find someone to repair the system extended to the next day. Thus, upon all the facts, the finding of misconduct as to charge 5 is sustained. Charge 11 alleged misconduct in the failure to attend a

---

* It is worthy of note that for a number of years prior to April, 1973, a paid electrician was employed to maintain and repair the system. This position was thereafter dropped for budgetary reasons, only to be restored a few months after the events above-described.

monthly meeting of the Commissioners in November, 1973. Petitioner does not offer any justification for his nonattendance, and his contention that he did not receive specific notice of the meeting lacks merit in view of his admission that he knew when the regular meetings were held and that the meeting in question was held on the regular date. Furthermore, petitioner was actually contacted during the meeting and persisted in his refusal to attend. Petitioner contends, however, that nothing in the applicable rules and regulations of the fire department or the village required his attendance at such meetings. This contention also lacks merit. The nature of petitioner's position made him responsible to the Commissioners and required his co-operation with them. It seems beyond dispute that his attendance at such meetings was essential to the proper functioning of the department, and thus his refusal of a reasonable request to attend such a meeting constituted misconduct. Petitioner finally contends with regard to charge 11 that he could not be required to attend a meeting during hours when he was off duty. This issue was not raised at the hearing below and thus is not properly before us but, in any event, we feel petitioner could have employed other methods to test his claim that such attendance would entitle him to compensatory time off, without provoking a confrontation. This brings us to a consideration of charge 10 which alleged misconduct in sending a letter for publication to the editor of the local newspaper questioning whether the death of a child in a fire might have been avoided if petitioner's vehicle had been available to him rather than to a volunteer chief on a particular weekend. For a number of reasons, this charge cannot be sustained. In the first place, his conduct was alleged to have violated a village regulation prohibiting public speeches on official business. No citation of authority is necessary to find that in the absence of clearly delineated standards setting forth circumstances under which, for reasons of public safety, the need for confidentiality, or the like, expression might be restricted, such a prior restraint on the freedom of speech would likely fail a test of constitutionality under the strictures of the First Amendment. The validity of the regulation, however, need not be decided. In the instant case, it was charged that the letter was detrimental to the Scotia Fire Department. As we examine the record, we find that it is totally devoid of any evidence tending to establish any such detriment, and the hearing officer's report merely concluded that petitioner's action in this regard "disclosed poor judgment". While reasonable people may differ as to the appropriate means for airing the issues raised in petitioner's letter, we find that his actions do not rise to the level of misconduct, wherefore the determination as to charge 10 must be annulled. Determination modified, by annulling so much of the determination as sustained charge 10, and, as so modified, confirmed, without costs. Herlihy, P. J., Greenblott, Kane, Main and Larkin, JJ., concur.

